UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT WILHELM,<br><br>            Plaintiff,<br><br>v.<br><br>DAWSON GEOPHYSICAL COMPANY, STEPHEN C. JUMPER, MARK A. VANDER PLOEG, CRAIG W. COOPER, MICHAEL L. KLOFAS, and TED R. NORTH,<br><br>           Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Robert Wilhelm ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Dawson Geophysical Company ("Dawson" or the "Company") and Dawson's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to Wilks Brothers, LLC through its wholly-owned subsidiary WB Acquisitions Inc. (collectively, "Wilks").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on October 25, 2021. The 14D-9 recommends that Dawson stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby Dawson is acquired by Wilks. The Proposed Transaction was

1

first disclosed on October 25, 2021, when Dawson and Wilks announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Wilks has commenced a tender offer to acquire all of the outstanding shares of common stock of Dawson for $2.34 per share (the "Merger Consideration"). The tender offer will remain open until November 30, 2021.

3. The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the financial projections prepared by Dawson management, the financial analysis conducted by Moelis & Company LLC ("Moelis"), Dawson's financial advisor, potential conflicts of interest, and the background of the Proposed Transaction.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Dawson' stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Dawson.

6. Defendant Dawson is a corporation organized and existing under the laws of the State of Texas. The Company's principal executive offices are located at 508 West Wall, Suite 800, Midland, Texas 79701. Dawson common stock trades on NASDAQ under the ticker symbol "DWSN."

7. Defendant Stephen C. Jumper has been Chairman of the Board, President, Chief Executive Officer, and a director of the Company since 2001.

8. Defendant Mark A. Vander Ploeg has been a director of the Company since 2015.

9. Defendant Craig W. Cooper has been a director of the Company since 2015.

10. Defendant Michael L. Klofas has been a director of the Company since 2018.

11. Defendant Ted R. North has been a director of the Company since 2015.

12. Nonparty Wilks Brothers, LLC is a Texas limited liability company with its headquarters in Cisco, Texas.

13. Nonparty WB Acquisitions Inc. is a Delaware corporation and a subsidiary of Wilks Brothers, LLC.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

15. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

16. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

# FURTHER SUBSTANTIVE ALLEGATIONS

## A. Background of the Company and the Proposed Transaction

17. Dawson is a provider of onshore seismic data acquisition services in North America. Dawson acquires and processes 2-D, 3-D and multi-component seismic data clients that range from major oil and gas companies to independent oil and gas operators as well as providers of multi-client data libraries.

18. On October 25, 2021, the Company entered into the Merger Agreement with Wilks.

19. According to the press release issued on October 25, 2021, announcing the Proposed Transaction:

**DAWSON GEOPHYSICAL ANNOUNCES MERGER AGREEMENT
WITH WILKS BROTHERS, LLC**

*Provides Preliminary Estimated Third Quarter 2021 Financial Information*

**MIDLAND, Texas, Oct. 25, 2021 /PRNewswire/ --** Dawson Geophysical Company (NASDAQ: DWSN) ("Dawson" or the "Company") and Wilks Brothers, LLC ("Wilks") today announced that they have entered into a definitive merger agreement (the "Merger Agreement") pursuant to which a subsidiary of Wilks will commence on or before November 1, 2021 a tender offer to acquire all of the Company's outstanding common shares for $2.34 per share in cash (the "Offer"). Subject to the closing of the Offer, the merger agreement also contemplates that Wilks will acquire any Dawson shares that are not tendered into the Offer at the same price per share through a second-step merger, which will be completed as soon as practicable following the closing of the Offer, subject to the approval of at least 80% of the outstanding Dawson shares.

**Dawson Board of Directors Recommendation**

The Board of Directors of the Company is recommending that the Company's shareholders tender their shares in the Offer.

The Company's Board of Directors, with the assistance of the Company's financial advisor, Moelis & Company LLC, commenced an on-going review and analysis of the Company's potential strategic alternatives in mid-2019. During this same period, Company management commenced efforts to scale the Company to match the declining demand for its seismic services. In reaching its decision to enter into the transaction with Wilks, the board has thoroughly considered the potential strategic options available to Dawson, the current and long term prospects for the

4

Company and the sector in which it operates, including the lack of meaningful and sustainable demand for seismic services, as well as an ongoing skilled labor shortage required to meet any potential increase in demand. Management believes that the Company's cash and other current assets will continue to decline even if the Company undertakes further right-sizing efforts relative to demand for the Company's services.  The board believes that this transaction presents all Dawson shareholders with an opportunity to achieve liquidity for their shares at the Offer price, is the most optimal path forward and is in the best interest of the shareholders.

The Company's President and Chief Executive Officer, Stephen C. Jumper, said, "Given the limited trading liquidity in our stock, this transaction offers our shareholders compelling value for their shares and the ability to most efficiently realize that value. It also provides Dawson with financial flexibility otherwise not available in the challenging environment in which the Company is currently operating. Our ability to withstand the continued volatile markets is enhanced with this partnership. The Wilks' entities have demonstrated a highly successful track-record and we believe they will be a strong, long-term partner for our employees and customers."

Additional information concerning the foregoing matters will be set forth in the Company's Solicitation/Recommendation Statement on Schedule 14D-9 to be filed with the Securities and Exchange Commission following the commencement of the Offer by Wilks.

**Tender Offer and Merger**

The transaction is not subject to a financing condition. The tender offer will be subject to customary conditions, including the tender of at least 80% of the outstanding shares of the Company pursuant to the Offer, which will be open for at least 20 business days following commencement (subject to mandatory extensions in certain circumstances). The Company and Wilks may mutually agree to permit closing of the Offer if less than 80% of the outstanding shares of the Company are tendered.  Subject to the closing of the Offer, the Merger Agreement also contemplates that Wilks will acquire any shares of Dawson that are not tendered into the Offer through a second-step merger, which will be completed as soon as practicable following the closing of the Offer and will require approval of at least 80% of the outstanding shares of the Company. Subject to the closing of the Offer, the parties expect to complete the merger in the fourth quarter of 2021.

B. **The Materially Incomplete and Misleading 14D-9**

20. On November 1, 2021, Dawson filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed

Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

21. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of its fairness opinion, Moelis reviewed certain "certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company furnished to us by the Company, including financial forecasts provided to or discussed with us by the management of the Company," *see* Moelis Fairness Opinion (Annex I to 14D-9), in connection with rendering its fairness opinion. Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that Dawson' management provided to the Board and Moelis.

22. Notably, the 14D-9 fails to disclose material information concerning the financial forecasts of Dawson, specifically line items underlying the Company's adjusted EBITDA and unlevered free cash flow in its management's financial projections.

23. The 14D-9 also omits the value of "Company NOL Utilization Estimates" relied upon by Moelis in rendering its fairness opinion.

24. This omitted information is necessary for Plaintiff to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Moelis' Financial Analyses*

25. The 14D-9 fails to include key data, inputs, and assumptions underlying Moelis' fairness opinion and the bases of its financial analyses.

26. Omission of this material information prevents Plaintiff and the Company's

6

stockholders from meaningfully evaluating Moelis' advice and decide what credence to place, if any, in Moelis' recommendation.

27. With respect to Moelis' *Discounted Cash Flow Analysis*, the 14D-9 omits: (a) the Company's terminal value; (b) the estimated terminal year Adjusted EBITDA used by Moelis to calculate the Company's terminal value; (c) the NOL's used in the analysis; and (d) the inputs and assumptions that underpin the range of discount rates applied by Moelis in its analysis.

28. With respect to Moelis' analysis of premiums paid in recent transactions, the 14D-9 omits: (a) the transactions analyzed and (b) the individual premiums paid in each of these transactions.

29. Moelis' exact valuation methods that were used to generate its fairness opinion recommending the Proposed Transaction must be fully disclosed to Company stockholders.

### *Materially Incomplete and Misleading Disclosures Concerning Potential Conflicts of Interest*

30. The 14D-9 fails to disclose material information concerning Moelis' potential conflicts of interest. It omits: (a) the monthly fees Moelis received from Dawson in connection with its engagement as Dawson's financial advisor; (b) description of any services Moelis rendered to Wilks or its affiliates in the previous years; and (c) the amount of fees Moelis received from Wilks for any such prior services.

31. The 14D-9 also fails to disclose material information concerning potential conflicts of interest concerning Company insiders. The 14D-9 omits any specific information related to discussions and negotiations by Wilks and Dawson of potential employment and retention by Wilks of Dawson's executive officers. The 14D-9 omits the number, dates, and content of any such communications.

32. The 14D-9 does not address whether any of Wilks' proposals or indications of

interest addressed the possible employment or retention of Dawson's officers or management in the surviving company or their equity ownership or participation in the surviving company following the tender offer.

33. Contents of discussions relating to potential post-merger employment and benefits between the Company and Wilks during the negotiations of the Proposed Transactions are vital to stockholders to identify potential conflicts of interest by Dawson and its Board, which may have tainted the Board's decision to approve the Proposed Transaction.

34. Plaintiff needs this information to assess the motivation of Dawson's management and Board and evaluate whether their approval of the Proposed Transaction evinces an intention to act in the best interest of the Company's public stockholders or in their self-interest.

*Materially Incomplete and Misleading Disclosures Concerning the Background of the Proposed Transaction*

35. The 14D-9 fails to disclose material information concerning the background of the Proposed Transaction. It fails to disclose the existence and terms of any confidentiality agreements between Dawson and the bidders during the sale process and whether or not any confidentiality agreements included a "don't-ask, don't-waive" standstill provision which may be preventing such bidders from making a topping bid for the Company.

36. Whether or not alternative competitive bids are being prevented by confidentiality agreements is certainly material information that must be provided to Plaintiff for him to make an informed decision on the Proposed Transaction.

37. Additionally, the foregoing information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material

information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

38. Furthermore, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

39. Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

40. The 14D-9 indicates that on October 24, 2021, Moelis reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Dawson stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Moelis' financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

41. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

### All Defendants for Violations of Section 14(d) and 14(e) of the Exchange Act and Rule 14d-9

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting Dawson stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

44.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Dawson, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

45.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

46.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Dawson shares and the financial analyses performed by Moelis in support of their fairness opinions; (iii) potential conflicts of interest; and (iv) the process leading up to the Proposed Transaction.

47. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that Moelis reviewed and discussed their financial analyses with the Board on October 24, 2021, and further states that the Board considered Moelis' financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

48. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Dawson within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Dawson and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

53. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 12, 2021                                     **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*